**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-61344-RAR**

**JADDIER THOMAS SANCHEZ**,

     Movant,

v.

**UNITED STATES OF AMERICA**,

     Respondent.

_____/

## ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255

**THIS CAUSE** comes before the Court on Movant, Jaddier Thomas Sanchez's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate"), [ECF No. 1].  Movant challenges the lawfulness of his conviction and sentence in Case No. 21-CR-60041-RAR.  *See generally* Mot. to Vacate.  Respondent filed a Response, [ECF No. 6], arguing that the Motion to Vacate should be denied, along with attached Exhibits, [ECF Nos. 6-1–6-3].  Movant then filed a Memorandum of Law, [ECF No. 14].  After careful review of the record, the governing law, the arguments of the parties, and being otherwise fully advised, the Court **DENIES** the Motion to Vacate.

## BACKGROUND

### I.     Offense Conduct

On or around January 17, 2021, Movant confronted two victims ("Victims 1 & 2") when they arrived at their residence.  *See* Factual Proffer, [CR ECF No. 52], ¶ 2.[1]  Movant, who wore no facial coverings, "appeared with a black semi-automatic handgun" and grabbed Victim 2 by

---

[1] Docket entries from Movant's criminal case in Case No. 21-CR-60041 will appear as [CR ECF No. X].

her hair. *Id.* The victims recognized Movant as a man they met through a third victim ("Victim 3"), who had previously dated Movant. *See id.* At the time, Victim 3 was inside the residence. *See id.* ¶ 3.

Movant demanded money from Victims 1 and 2, claiming "that Victim 3 had stolen his safe[,]" and he ordered them at gunpoint to enter a vehicle with him. *Id.* Upon Movant's instruction, Victim 1 drove them to and withdrew money from three separate banks in Broward County, Florida—$1,000 in cash from each location—and Movant took the money. *Id.* ¶ 4. Movant later ordered Victim 2 to "restrain Victim 1's hands and feet together" in the backseat and then directed Victim 2 to drive back to the residence. *Id.* ¶ 5.

When they returned, Movant demanded from Victim 3 the location of his safe, which Victim 3 confirmed was inside the residence. *See id.* ¶ 6. He then ordered Victim 2 to grab the safe, bring it to him, and drive the four of them to Palm Beach County. *See id.* ¶¶ 6–7. Near Belle Glade, Florida, Movant directed Victims 1 and 2 at gunpoint to exit the trunk and "lay down in a ditch" and then forced Victim 3 at gunpoint "to tie Victim 1 and 2 up." *Id.* ¶ 8. After destroying Victim 1 and Victim 2's cellphones, he demanded that Victim 3 drive them both away from the scene. *See id.* Victims 1 and 2 eventually escaped and were spotted by officers for the Palm Beach County Sheriff's Office. *See id.* ¶ 9. Meanwhile, Movant forced Victim 3 to drive north, "h[olding] [her] at gunpoint as they continued traveling throughout Florida and Georgia, before they ultimately arrived in Virginia." *Id.* ¶ 11. Movant made various threats to all three victims throughout the incident. *See id.* ¶¶ 9, 11.

On or around January 18, 2021, a Be-On-The-Lookout ("BOLO") alert had been issued for the license plate of Movant's truck. *See id.* ¶ 12. Officers found Movant and took him into custody. *See id.* ¶ 13. After searching the vehicle, officers found the safe, zip ties, ATM

withdrawal slips, $3,000 in cash, and a Taurus PT 24/7 .40 caliber pistol with eight rounds of ammunition in the magazine. *See id.* ¶¶ 14–15.  On February 24, 2021, Movant was indicted by a grand jury in this District on three counts of kidnapping, in violation of 18 U.S.C. § 1201(a)(1) and one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *See* Indictment, [CR ECF No. 7], at 1–3.

## II.      Plea Hearing

On October 19, 2022, Movant decided to enter an open plea of guilty to all four counts in the Indictment.  *See generally* Plea Colloquy Transcript, [CR ECF No. 93].  During the plea colloquy, the Court determined Movant was competent to enter the plea after considering his statements under oath and the opinion of his lawyer. *See id.* at 5:20–6:8.  Movant further swore that he was "fully satisfied with the counsel, representation, and advice given to [him] . . . by [his] attorney[,]" and that there was nothing with which he was "not satisfied[.]" *Id.* at 7:13–19.  Movant also swore that he understood that he faced a maximum penalty of life imprisonment for the kidnapping counts and a maximum penalty of ten years of imprisonment for the firearm possession count.  *See id.* at 7:20–8:8.

Moreover, Movant said he understood that the Court would not allow him to withdraw his plea "based upon recommendations made by either side, the [G]overnment, or [his] lawyer," and that the Court "may impose a sentence . . . that is more severe or serious than the one that [he] may [have] anticipate[d] up to and including the statutory maximums[.]" *Id.* at 11:6–13.  Movant then confirmed that he was pleading guilty of his "own free will," that he had not been "force[d] or promised anyone to plead guilty," and that, by pleading guilty, he was waiving his right to a trial. *See id.* at 13:24–16:11.  After the Government presented the Factual Proffer in open court, Movant

swore under oath that the proffer was "an adequate statement of what happened in this case[.]" *Id.* at 21:11–14.

The Court then accepted Movant's open plea, finding that he was "fully competent and capable of entering an informed plea"; that he was "aware of the nature of the charges and the consequences of the plea"; and that his plea was "a knowing, intelligent, and voluntary plea, supported by [an] independent basis in fact containing each of the essential elements of the offense." *Id.* at 22:8–16.

### III. Sentencing

Movant's Presentence Investigation Report ("PSI") produced an Advisory Guidelines Range of 168 to 210 months' imprisonment. Sentencing Transcript, [CR ECF No. 94], at 2:23–3:5. However, prior to Movant's sentencing, the Government moved for an upward variance, requesting that the Court impose a term of imprisonment of thirty years. *See generally* Mot. for Upward Variance/Departure, [CR ECF No. 60]. The Government's Motion for Upward Variance was untimely; it explained, however, that it had been "awaiting supporting documents from Florida Department of Corrections" but that it had "previously notified" Movant's counsel of its "intent to seek an upward variance from the inception of the case," and Movant's lawyer had "not oppose[d] the untimely filing of [the] Motion." *Id.* at 1 n.1.

Arguing for an upward variance, the Government contended that the facts of Movant's offense were "heinous" and "unconscionable," *id.* at 2; that Movant had a "lengthy criminal history" that included charges for petit theft, retail theft, burglary, battery, robbery, throwing a deadly missile at a building, aggravated assault, attempted kidnapping, domestic battery, violation of an injunction for protection against domestic violence, and resisting officer without violence, *id.* at 4–6; that Movant had an extensive prison disciplinary record, *see id.* at 8–9; and that Movant

was "an admitted high-ranking member of the Latin Kings" gang, *id.* at 10.  Movant responded, arguing that the facts of the case did not justify doubling his sentence and that the Government's request was rooted in aggravating circumstances for which the Guidelines had already accounted. *See generally* Resp. to Mot. for Upward Variance, [CR ECF No. 62].

At Movant's sentencing, the Court considered the arguments of both parties.  The Government highlighted that much of Movant's criminal history was underrepresented in the PSI, while Movant countered that many of those offenses were not pursued by the State.  *See* Sentencing Tr. at 5–6.  The Court noted that "the most startling issue" in the record was "how fast" Movant had committed the three kidnappings after completing a 15-year sentence for robbery—a serious offense, though less severe than the crimes at issue in Movant's case.  *Id.* at 6:6–15.  And the Court emphasized that, not only did Movant's previous conduct—where state action was taken— demonstrate "a very high rate of recidivism[,]" *id.* at 7:5–10, but Movant had also "received approximately 65 disciplinary actions" while he served that 15-year prison term, *id.* at 7:21–22. The Court then heard statements from all three victims.  *See id.* at 13–17.  Thereafter, Movant's counsel insisted that a sentence under the Guidelines was appropriate despite Movant reoffending after leaving prison.  *See id.* at 25–33.

Ultimately, the Court agreed that the Government's request for a 30-year sentence was "too high." *Id.* at 39:5.  It nevertheless believed that a 25-year sentence was appropriate in light of the seriousness of the offense; how quickly Movant reoffended; how his criminal history was "woefully underrepresented" in the Guidelines calculation; the "astronomical" number of Movant's violations inside the State's prison system; his "troublesome proclivity for domestic violence"; and the safety of the public.  *Id.* at 37–41.  The Court thus partially granted the

Government's Motion,[2] and on January 24, 2023, the Court adjudicated Movant guilty of all four counts in the Indictment and sentenced him to 300 months' imprisonment followed by a five-year term of supervised release. *See generally* Judgment, [CR ECF No. 65].

### IV.    Appeal

Movant filed an appeal from his criminal judgment on February 7, 2023. *See* Notice of Appeal, [CR ECF No. 67]. On appeal, Movant solely argued "whether the district court abused its discretion when it granted the prosecution's motion for an upward variance/departure and sentenced the [D]efendant to a substantively unreasonable term of imprisonment of 300 months (25 years)[,] almost double the recommended range under the Guidelines." Appellant's Initial Brief, *United States v. Sanchez*, No. 23-10414 (11th Cir. Nov. 1, 2023), ECF No. 36 at 11. The Eleventh Circuit Court of Appeals affirmed Movant's sentence, holding that Movant's "sentence 90 months over the Guidelines range was not substantively unreasonable." *United States v. Sanchez*, No. 23-10414, 2024 WL 1192949, at *1 (11th Cir. Mar. 20, 2024) (per curiam). Movant did not seek certiorari review in the United States Supreme Court. Rather, Movant filed the instant Motion to Vacate attacking the lawfulness of his criminal judgment; the Government concedes the Motion to Vacate is timely. *See* Resp. at 12. This Order follows.

## STANDARD OF REVIEW

### I.    28 U.S.C. § 2255

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is only entitled to relief under § 2255 if the court imposed a sentence that: (1) violated the Constitution or

---

[2] The Court clarified near the conclusion of Movant's sentencing that it was granting the Government's request for *both* an upward variance and an upward departure from the Guidelines. *See* Sentencing Tr. at 42:25–43:5.

laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence." 28 U.S.C. § 2255(b). The § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).

## II.      Habeas Pleading Standards

Rule 2(b) of the Rules Governing § 2255 Cases requires a movant to, among other things, "specify all the grounds for relief available" and "state the facts supporting each ground[.]" *Mayle v. Felix*, 545 U.S. 644, 649 (2005); *see also* R. Governing § 2255 Cases 2(b). In comparison to other civil actions, § 2255 is subject to "heightened pleading requirement[s]" which require the movant to use "'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a)." *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). Put another way, a § 2255 motion must contain "enough specific facts that, if they were true, would warrant relief[.]" *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). And it is well settled that "[f]ederal district courts must 'dismiss summarily any habeas petition that appears legally insufficient on its face.'" *Orr v. United States*, 800 F. App'x 705, 707 (11th Cir. 2020) (alteration adopted; other alteration added; quoting *Borden*, 646 F.3d at 810).

### III.    Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e."  U.S. CONST. AMEND. VI.   "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense."  *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).   "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*."  *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  If a postconviction movant has pled

guilty to the underlying offenses, the prejudice prong is modified so that the movant is instead required to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## ANALYSIS

In his Motion to Vacate, Movant states four grounds for federal habeas relief.

Ground One is articulated as follows:

> Counsel [was] constitutionally ineffective for failing to properly object to the [G]overnment's untimely request for an upward variance, which substantially increased [Movant]'s sentencing guideline range from what counsel initially advised him of before pleading guilty.  Thus, his plea of guilty was unknowing, unintelligent, and involuntary, in violation of his Fifth and Sixth Amendment rights to the U.S. Constitution.

Mot. to Vacate at 13.  As for Ground Two, Movant writes:

> Counsel [was] constitutionally ineffective for failing to object to the uncharged conduct that the Court improperly utilized to fashion [Movant]'s sentence, in violation of his Fifth and Sixth Amendment rights to the U.S. Constitution.

*Id.* at 14.  As for Ground Three, he alleges:

> Counsel [was] constitutionally ineffective for failing to properly object to the inaccuracies within the PSI, and, by not doing so, the [C]ourt considered the inaccurat[e] information[.] Thus, [Movant]'s Fifth and Sixth Amendment rights to the U.S. Constitution were violated.

*Id.* at 15.  Lastly, Movant alleges under Ground Four as follows:

> Counsel [was] constitutionally ineffective for failing to negotiate a plea deal for [Movant] after learning that he wished to plead guilty to the charges charged within the [I]ndictment, in violation of his Sixth Amendment right to counsel.

*Id.* at 16.

The Court addresses each ground in turn and, for the following reasons, finds them meritless.[3]

## I.      Ground One

In his first ground, Movant avers that his counsel was ineffective because he "fail[ed] to . . . object" to the Government's untimely Motion for Upward Variance/Departure. *Id.* at 13. He explains that, after counsel told him that he "was facing a guideline range of 'only' 165–210 months of incarceration[,]" Movant decided to "ple[ad] guilty to the [I]ndictment." *Id.* Counsel had not told Movant, however, that the Government "was intending to seek the upward variance," which he says made his guilty plea "unknowing" and "involuntary[.]" *Id.* Further, counsel had not "oppose[d] the untimely filing" of the Government's Motion, and Movant's sentencing occurred "without any time [for Movant] to either reflect or consult with counsel[.]" *Id.*

The Court liberally construes two subclaims from Ground One: (1) that Movant's guilty plea was not knowingly and voluntarily entered into because his lawyer failed to inform him that the Government was seeking an upward variance, which constituted ineffective performance under the Sixth Amendment ("Subclaim One"); and (2) that his lawyer was constitutionally ineffective under the Sixth Amendment for failing to object to the Government's Motion for Upward Variance/Departure on the basis that it was untimely ("Subclaim Two"). *See Gunn v. Newsome*, 881 F.2d 949, 961 (11th Cir. 1989) ("[C]ourts should construe a habeas petition filed *pro se* more liberally than one drawn up by an attorney." (citation omitted)).  For the reasons below, both subclaims are unavailing.

---

[3] As a threshold matter, the Court permitted Movant to file an out-of-time "memorandum of law to supplement his motion to vacate[.]"  Paperless Order, [ECF No. 9].  However, the Court *never* granted Movant leave to amend his substantive allegations or include any additional facts for the Court's review. Therefore, the Court will not consider any such material in Movant's out-of-time Memorandum of Law, [ECF No. 14].

### A.      Subclaim One

The Court is unpersuaded that Movant's counsel was constitutionally ineffective for failing to advise Movant prior to his guilty plea that the Government was planning on seeking an upward variance.  To prevail, Movant must establish that his "counsel provided deficient assistance" and that he "was prejudice[d] as a result."  *Harrington v. Richter*, 562 U.S. 86, 104 (2011).  Prejudice means there is a reasonable probability that the outcome of Movant's change-of-plea hearing would have been different had his lawyer disclosed the Government's plans to pursue an upward variance.  *See Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (stating that, to prove *Strickland* prejudice in the plea-stage context, a movant must show a reasonable probability that "the outcome of the plea process would have been different with competent advice").  The Court need not address whether his lawyer's conduct was deficient because it finds that Movant has not shown prejudice.

"An erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance."  *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981).  A defendant's reliance on counsel's erroneous prediction of a more lenient sentence does not, standing alone, render a guilty plea involuntary—especially where the sentencing court expressly informs the defendant that his sentence could exceed the sentence counsel predicted.  *See United States v. Pease*, 240 F.3d 938, 940–41 (11th Cir. 2001) (rejecting defendant's contention that his plea was not knowing and voluntary after he received an enhanced sentence as a career offender because the district court had expressly advised him that he faced a statutory maximum sentence of life imprisonment, despite counsel's prediction that his sentence under the plea agreement would range from five to ten years).

Here, at Movant's change-of-plea hearing, the Court expressly warned Movant that it "may impose a sentence . . . that is more severe or serious than the one that you may anticipate *up to and including the statutory maximums*" of the statutes under which he was charged.  Plea Colloquy Tr. at 11:6–13 (emphasis added).  And those statutory maximums, the Court explained, included life imprisonment for the kidnapping counts.  *See id.* at 7:20–24.  The Court then asked Movant, "Do you understand that?"—and Movant replied under oath, "Yes, sir."  *Id.* at 11:12–13.  Movant's sworn statements carry a strong presumption of verity.  *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Therefore, since Movant was plainly informed by the Court prior to pleading guilty that he could be sentenced well beyond the predictions of his counsel, Movant cannot establish prejudice.  *See, e.g.*, *Cruz v. United States*, 188 F. App'x 908, 914 (11th Cir. 2006) (finding no ineffective assistance where the movant asserted that counsel induced her guilty plea through misrepresentations about the underlying facts and the sentence she would likely receive because, *inter alia*, "[t]he court . . . explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else"); *Whitlow v. United States*, No. 25-CV-00816, 2026 WL 789198, at *6 (M.D. Ala. Mar. 20, 2026) (finding no ineffective assistance for counsel's incorrect advice on the defendant's Guidelines range where the magistrate judge told the defendant "that the sentencing court could reject the Government's sentencing recommendation, give a sentence more serious than he anticipated up to the statutory maximum, and give a sentence higher or lower than the sentencing guidelines").  Subclaim One is thus **DENIED**.

### B.  Subclaim Two

The Court further finds that Movant's counsel was not ineffective for failing to object to the Government's Motion for Upward Variance/Departure because it was untimely.  Movant has shown neither deficient performance nor prejudice.  To begin, the Court finds that Movant's counsel was not deficient for failing to object to the Motion on account of its untimeliness.  As Respondent correctly observes, counsel is not constitutionally required to raise every conceivable objection to avoid acting below constitutional standards.  Resp. at 16.  Indeed, "[d]ecisions about whether to object—and when, and in what form—are tactical choices consigned by *Strickland* to a lawyer's reasoned professional judgment."  *Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1295 (11th Cir. 2014).  And "[g]ood lawyers, knowing that judges and juries have limited time and limited patience, serve their clients best when they are judicious in making objections."  *Id.*

The Court must therefore "reconstruct the circumstances of [Movant's] counsel's challenged conduct" and "evaluate the conduct from [her] perspective at the time."  *Strickland*, 466 U.S. at 689.  Here, when faced with the Government's Motion, Movant's counsel elected to litigate the Motion on the merits instead of contesting its timeliness.  Counsel could well have concluded that the Court would be more receptive to resolving the Motion on substantive grounds than on a procedural timeliness challenge.  That strategic decision fell well within the bounds of reasonable professional judgment.  *See Cookinson v. Sec'y, Fla. Dep't of Corr.*, No. 10-CV-1751, 2013 WL 5487046, at *3 (M.D. Fla. Sept. 30, 2013) ("Deficient performance is performance which is objectively unreasonable under prevailing professional norms. [ ] Sound tactical decisions within a range of reasonable professional competence are not vulnerable to collateral attack." (citing *Strickland*, 466 U.S. at 688)).

In any event, Movant cannot show prejudice.  He has not demonstrated how the Court may have denied the Government's Motion if Movant's counsel had objected to its untimeliness.  *See* Mot. to Vacate at 13.[4]  He thus "alleges no facts showing he was prejudiced by his counsel's performance."  *Valero v. United States*, No. 24-61944, 2025 WL 401389, at *3 (S.D. Fla. Feb. 5, 2025).  "Conclusory allegations unsupported by specifics regarding ineffective-assistance-of-counsel claims are insufficient to warrant § 2255 relief."  *Delva v. United States*, 851 F. App'x 148, 155 (11th Cir. 2021) (citing *Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015)).  Subclaim Two is therefore **DENIED**.

## II.      Ground Two

In Ground Two, Movant alleges that his lawyer was ineffective for failing to object to the Court's reliance on "uncharged conduct" in sentencing him.  Mot. to Vacate at 14.  By "uncharged conduct," Movant references his "BOP and [F]DOC disciplinary record[.]"  *Id.*  He avers that, "despite [his] request to counsel to object, counsel advised him that the [C]ourt was allowed to take in account uncharged conduct to fashion his sentence."  *Id.*  The Court finds that Ground Two fails on the merits.

First, Movant cannot show deficient performance.  That is because Movant's counsel was correct—it was appropriate for the Court to consider Movant's previous uncharged conduct in deciding his sentence.  Sentencing courts are directed to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Section 3553 emphasizes the need for sentences "to reflect the seriousness of the

---

[4] Movant appears to argue that he was prejudiced because he was unaware of the Motion having been filed and because his lawyer "did not oppose the untimely filing of [the] [M]otion[.]"  Mot. to Vacate at 13.  "So," he says, "at the outset of [Movant's] sentencing hearing, without any time to either reflect or consult with counsel, the [C]ourt began the formalities of the proceeding."  *Id.*  But Movant provides no facts suggesting that, had his lawyer consulted with him regarding the Motion prior to his sentencing, the outcome of his sentencing would have been different.

offense, to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).

As relevant here, "*[n]o limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661 (emphasis added).  And "[c]ourts may consider uncharged conduct in constructing a sentence if doing so serves the purposes of one or more sentencing factors."  *United States v. Aines*, No. 19-13898, 2022 WL 104274, at *8 (11th Cir. Jan. 11, 2022); *see also United States v. Jenkins*, No. 20-13831, 2022 WL 474704, at *4 (11th Cir. Feb. 16, 2022) ("That the uncharged conduct may not have been relevant conduct for purposes of calculating the guideline range does not necessarily mean it was not relevant to sentencing more generally.").

Thus, because it was well within the Court's discretion to consider Movant's uncharged conduct committed while he served a previous prison term, his counsel was not deficient for failing to raise the issue at sentencing.  *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Second, Movant cannot establish prejudice.  Even if the Court had not considered Movant's prison disciplinary record, he cannot show that the outcome of his sentencing would have been different.  Notably, the substantive reasonableness of Movant's sentence was already affirmed on appeal based on the Court's consideration of other factors.  Without commenting at all on Movant's prison-based conduct, the Eleventh Circuit explained that the Court lawfully "considered [Movant]'s present crime and criminal history to conclude that he is a violent, repeat offender";

that it properly "found that [Movant]'s criminal history was woefully underrepresented in the Guidelines calculation"; and "that a stronger sentence [wa]s necessary to protect the public from his future crimes." *Sanchez*, 2024 WL 1192949, at *1 (internal quotation marks omitted). Movant therefore cannot show that he was prejudiced by the Court's consideration of his prison disciplinary record.[5] Thus, Ground Two is **DENIED**.

### III.    Ground Three

In Ground Three, Movant claims that his lawyer was constitutionally ineffective for failing to object to certain "inaccuracies within the PSI[.]" Mot. to Vacate at 15. Movant specifies that, after he had first reviewed the PSI, he "informed counsel of [its] inaccuracies," after which "counsel informed him that she would raise the objections before the revised PSI was completed by the U.S. Probation Office." *Id.* However, because "counsel never objected to the inaccuracies, . . . the [C]ourt accepted the inaccuracies as being accurate," which resulted in an unconstitutional sentence. *Id.*

Ground Three is deficient. In habeas proceedings, "allegations must be factual and specific," and "[c]onclusory allegations are simply not enough to warrant a hearing." *Chavez*, 647 F.3d at 1061 (citation omitted). Movant never identifies—with any specificity—the purported inaccuracies in the PSI to which he refers. Without any meaningful detail about the alleged errors, the Court cannot determine whether the PSI was inaccurate, much less whether Movant suffered prejudice as a result. *Girard v. United States*, No. 16-12781-E, 2017 WL 5624882, at *7 (11th

---

[5] In concluding that Movant's sentence was substantively reasonable, the Eleventh Circuit may have necessarily (though implicitly) concluded that the Court's consideration of his prison disciplinary record was reasonable under the 18 U.S.C. § 3553(a) factors. In that case, then, Movant's instant claim is procedurally barred, as a § 2255 movant "is procedurally barred from reasserting as ineffective assistance of counsel a claim that was decided adversely on direct appeal." *United States v. Aybar*, No. 09-CR-248, 2017 WL 4226668, at *8 (M.D. Fla. Sept. 22, 2017) (citing *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014)).

Cir. June 14, 2017) ("[T]o the extent that Girard argues that his counsel was ineffective for failing to correct 'numerous' other errors in the PSI, Girard has failed to specifically identify any other alleged errors or resulting prejudice.  Thus, he cannot show deficient performance or prejudice as to this claim.").  Ground Three is therefore **DENIED**.

### IV.    Ground Four

Lastly, in Ground Four, Movant alleges that his counsel was ineffective for failing to negotiate a plea deal on his behalf.  *See* Mot. to Vacate at 16.  Movant states that, after he expressed his "wishes to plead guilty," his counsel "advised him that he would benefit more by pleading guilty openly" rather than by a written plea agreement with the Government.  *Id.* (cleaned up). Consequently, his counsel "never negotiated a plea deal with the [G]overnment[,]" which "led to, among other things, the [G]overnment seeking an upward variance which was granted by the [C]ourt even though it was untimely."  *Id.*   In other words, Movant argues his counsel was ineffective for not pursuing a written plea agreement which, in Movant's view, would have avoided an upward variance applied to his sentence.

Movant's argument fails as waived.   The general rule is that "[a] defendant's [unconditional] plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (quoting *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984)).  "Moreover, the waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea."  *Scarborough v. McNeil*, No. 08-21104, 2009 WL 595930, at *4 (S.D. Fla. Mar. 6, 2009) (citing *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)).

Here, Movant's claim challenges counsel's pre-plea conduct leading up to his open plea. But Movant does not contest the knowing and voluntary nature of that plea. He never alleges, for instance, that he would not have pleaded guilty absent counsel's alleged errors. Accordingly, "Movant's voluntary guilty plea thus constitutes a waiver of any claim that counsel was ineffective in failing to negotiate a more favorable plea agreement." *Hurtado-Paz v. United States*, No. 10-21893, 2010 WL 5575547, at *3 (S.D. Fla. Dec. 10, 2010), *report and recommendation adopted*, 2011 WL 121888 (S.D. Fla. Jan. 13, 2011).

In any event, Movant cannot establish either deficient performance or prejudice. Movant appears to assume that, had counsel negotiated a written plea agreement with the Government, the Government would not have pursued an upward variance. But he alleges no facts suggesting the Government would have agreed to a written plea agreement while also relinquishing its ability to seek an upward variance. *See* Mot. to Vacate at 16. Without such allegations, the Court cannot determine whether counsel acted objectively unreasonably by recommending an open plea rather than pursuing a written agreement. *See Brown v. United States*, 583 F. Supp. 2d 1330, 1337–38 (S.D. Ga. 2008) ("Brown . . . must 'elicit the facts necessary to prove the claim,' [ ] and prove 'that particular and identified acts or omissions of counsel fell outside the wide range of professionally competent assistance.'" (first quoting *Blankenship v. Hall*, 542 F.3d 1253, 1272–73 (11th Cir. 2008); then quoting *Hillary v. Sec'y*, 294 F. App'x 569, 572 (11th Cir. 2008))).

Movant likewise fails to plead prejudice. He identifies no facts suggesting he would have rejected the open plea and instead insisted on a written plea agreement had he known the sentence he ultimately would receive. *See* Mot. to Vacate at 16. To the contrary, during the plea colloquy, the Court expressly advised Movant—and Movant confirmed he understood—that he faced up to the statutory maximum sentence on the charged offenses. *See* Plea Colloquy Tr. at 11:6–13. Even

so, he proceeded with the open plea.  On this record, Movant has not shown a reasonable probability that the outcome of the plea proceedings would have been different.

Accordingly, "[b]ecause [Movant] has not shown deficient performance or prejudice from h[is] counsel's alleged failure to negotiate a more favorable plea agreement, [Movant]'s claim that h[is] counsel was ineffective for failing to negotiate a more favorable plea agreement fails." *Whitehead v. United States*, No. 20-CR-009, 2025 WL 942842, at *7 (M.D. Ga. Mar. 5, 2025), *report and recommendation adopted*, 2025 WL 933103 (M.D. Ga. Mar. 27, 2025).  Ground Four is thus **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record.") (cleaned up).

## CERTIFICATE OF APPEALABILITY

A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a postconviction movant must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009).  Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a claim is "rejected . . . on the merits," a COA should only be granted if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)(2)).  If, on the other hand, a claim is dismissed "on procedural grounds," a COA should issue only if: (1) "jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right" and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, reasonable jurists would not find the Court's assessment of Movant's claims to be debatable or wrong. Accordingly, a COA is denied and shall not issue.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Movant Jaddier Thomas Sanchez's Motion to Vacate, [ECF No. 1], is **DENIED**. A certificate of appealability is **DENIED**, and any request for an evidentiary hearing is **DENIED**. All pending motions are **DENIED as moot** and all deadlines, if any, are **TERMINATED**. This case is **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 26th day of May, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:     Jaddier Thomas Sanchez
        28296-509
        Canaan-USP
        United States Penitentiary
        Inmate Mail/Parcels
        Post Office Box 300
        Waymart, PA 18472
        PRO SE